RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0211P (6th Cir.)
File Name: 03a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

CHARLES CLIFFORD,
    *Petitioner-Appellant,*

    *v.*
                  No. 01-5926

LARRY CHANDLER,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 01-00033—Joseph M. Hood, District Judge.

Argued: December 10, 2002

Decided and Filed: June 25, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
COLLIER, District Judge.[*]

———————

## COUNSEL

**ARGUED:** Brenda Popplewell, BRENDA POPPLEWELL, ATTORNEY AT LAW, Somerset, Kentucky, for Appellant. Courtney J. Hightower, OFFICE OF THE ATTORNEY

———————

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Brenda Popplewell, BRENDA POPPLEWELL, ATTORNEY AT LAW, Somerset, Kentucky, for Appellant. Courtney J. Hightower, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

———————

## OPINION

———————

CURTIS L. COLLIER, District Judge. Appellant Charles Clifford appeals the district court's order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. In his petition Appellant alleges: (1) there was insufficient evidence to support his conviction; (2) the state court gave an erroneous jury instruction; and (3) the state court erred in allowing a police officer to identify a voice he heard as sounding "black."

While Appellant's first two issues do not require much attention, his third issue is worthy of some elaboration. The propriety of identifying an individual's race by his voice is a matter of first impression in our Circuit. While we are sensitive to the injection of racial bias in a criminal prosecution and while we believe racial voice identification can create constitutional concerns in some instances, we conclude its use in the present case was not in error. Accordingly, for this and other reasons stated below, we **AFFIRM** the district court's decision.

### I. BACKGROUND

On May 20, 1996, Detective William Birkenhauer ("Birkenhauer") of the Northern Kentucky Drug Strike Force set up a meeting with a police informant, Gary Vanover ("Vanover"), at Vanover's apartment in Lexington Kentucky. The object of this meeting was to obtain cocaine base ("crack") from Vanover's friend, Appellant Charles Clifford ("Appellant").

At Appellant's trial Birkenhauer testified he arrived at Vanover's apartment and negotiated a drug transaction with Appellant. During the negotiations Appellant explained to Birkenhauer he only had $75.00 worth of crack with him at the moment, because he did not like to carry more than that on his person. However, he promised he would obtain more crack for Birkenhauer later that afternoon. Birkenhauer agreed to take the available crack and return for the rest later. Appellant then walked into his bedroom and Vanover came back out with the drugs. Birkenhauer later returned to the apartment, but no one was home.

At the time of the transaction, Birkenhauer wore a device that allowed another officer, Darrin Smith ("Smith"), to listen to the conversations in the apartment from a remote location. Smith testified at trial he heard four different voices in the apartment. He recognized one voice as Birkenhauer's and identified another as a female's voice. The other two voices he heard were male voices and one "sounded as if it was a male black" (J.A. at 188). Clifford is an African American and Vanover is white. Smith identified the "black male" voice as belonging to the person from whom Birkenhauer negotiated the purchase of the crack. The audio tape of the conversations was ruled inaudible by the court and was not admitted into evidence.

Vanover also testified at trial and contradicted the testimony of the officers. He stated the crack actually belonged to him and he made the sale to Birkenhauer, not Appellant. He also said he was the person who promised to obtain more drugs for Birkenhauer, and Appellant and Birkenhauer never discussed any drug transaction.

Appellant was found guilty at his jury trial of trafficking in a controlled substance and subsequently sentenced to 20 years in prison for being a persistent felony offender. He appealed his case to the Kentucky Supreme Court. The court affirmed the jury verdict and denied a petition for a rehearing.

On February 13, 2001, Appellant filed a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, in the United

States District Court for the Eastern District of Kentucky. The case was referred to a magistrate judge who issued a report and recommendation advising the district court deny the writ. On July 3, 2001, the district court adopted the report and recommendation and denied Appellant's request for a writ, dismissing the case. Appellant now appeals that decision.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Appellant argues there was insufficient evidence to support the jury's verdict that he engaged in drug trafficking. Pursuant to 28 U.S.C. § 2254(d)(1), a writ of habeas corpus may be granted if the district court concludes no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998). Appellant argues no rational juror could have found him guilty because Vanover contradicted both Smith and Birkenhauer's testimony about who negotiated the drug deal, there was no physical evidence presented at his trial, and there was no testimony he actually exchanged money or drugs with Birkenhauer.

When deciding whether there was sufficient evidence to support a jury verdict, we must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Viewing the facts in the light most favorable to the prosecution, we conclude there was sufficient evidence to support the jury's verdict in this case.

First, a police officer testified he negotiated a drug deal with Appellant. Even though Vanover contradicted this testimony, the jury was free to believe Birkenhauer and disbelieve Vanover. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002) (appellate courts refrain from making credibility determinations in determining the sufficiency of the evidence). Second, the fact no physical evidence was presented at the trial is of no moment. Circumstantial

evidence is sufficient to establish guilt. *United States v. Spearman*, 186 F.3d 743 (6th Cir. 1999). Finally, while there was no testimony Appellant actually gave money or drugs to Birkenhauer, there was evidence he negotiated the deal just prior to its consummation, which is sufficient to infer he was engaged in drug trafficking.

## B. Jury Instructions

Appellant argues the jury instructions in his case violated his right to due process because the instructions failed to instruct the jury on a lesser included offense. The Kentucky Supreme Court rejected this argument citing the fact Appellant had failed to raise the issue at the trial court level and therefore he had waived the right to appeal the issue under Kentucky law. *Clifford v. Commonwealth*, 7 S.W.3d 371, 376 (Ky. 2000). When a state court rejects a petitioner's claim pursuant to a state procedural ground, the claim is procedurally defaulted and the appellate court cannot grant relief absent a showing by petitioner of "cause" for the procedural default and "actual prejudice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991).

Appellant argues, however, he did not procedurally default his claim because the Kentucky Supreme Court not only denied him relief on the basis of a procedural ground, but went on to address the merits of his argument. In support of his argument he cites *Gall v. Parker*, 231 F.3d 265, 309 (6th Cir. 2000). In *Gall* we held a habeas court only adheres to a state procedural bar when the last state court rendering a reasoned judgment on the matter has stated clearly and expressly its judgment rests on that procedural bar. *Id*. Because the Kentucky Supreme Court addressed and rejected Gall's argument on the merits, we held the issue was not barred from review. *Id*. However, in *Gall* the Kentucky Supreme Court never mentioned a state procedural ground for rejecting Gall's argument. In contrast the Kentucky Supreme Court in the instant case explicitly stated the appellant had failed to preserve his argument pursuant to state procedural

rules. It then held in the alternative his claim lacked any merit. When the state court relies on an independent procedural ground in order to deny relief, its discussion of the merits of the claim will not disturb the procedural bar. *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000) (holding petitioner's failure to raise jury instruction argument was procedurally barred even though state court went on to note the instruction was correct). Accordingly, Appellant has procedurally defaulted his claim.

Appellant argues the cause for his procedural default was his attorney's ineffectiveness. A counsel's failure to properly preserve a claim in state court may constitute "cause," but only if that ineffectiveness itself constitutes a separate constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000). Further, in order to preserve the claim of ineffective assistance of counsel to establish "cause" we generally require the defendant to raise the issue in the state court proceedings. *See Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2646, 91 L. Ed. 2d 397 (1986). Appellant did not raise a claim of ineffective assistance of counsel in his state supreme court appeal, and has not established cause and prejudice excusing his failure to do so as *Edwards* requires. Thus, he cannot use his ineffective-assistance claim in this habeas proceeding to establish cause.

Even if Appellant could show cause for his procedural default, he cannot show he was actually prejudiced. He has not shown how he was entitled to a lesser included offense instruction. From the evidence presented the jury could not have believed he was guilty of possession of drugs without finding him guilty of trafficking. The only evidence presented about Appellant's drug activities concerned his selling drugs, not his possession of them. Thus, he did not suffer any prejudice from the fact a lesser included offense instruction was not given to the jury.

## C.   Smith's Voice Identification

Appellant argues the admission of Smith's testimony that a voice he heard from the wire transmission sounded like a black male's voice violated his due process rights under the 14th Amendment to the United States Constitution. In its opinion the Kentucky Supreme Court did not address this argument directly, and instead held the statement was admissible pursuant to the Kentucky Rules of Evidence.

Appellant argues he presented his 14th Amendment due process argument to the Kentucky Supreme Court when he cited the 14th Amendment in the section of his brief that concerned the voice identification. When a petitioner mentions the particular provision of the Constitution to support his argument in his brief, we have held he presents his constitutional claim for adjudication. *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir. 2000). As Appellant raised his claim regarding Smith's racial voice identification in his brief and cited the Kentucky Supreme Court to the 14th Amendment, he properly raised his argument before that court. *Id.*

Having decided the issue was properly raised before the state court, we must determine what standard of review is appropriate for Appellant's claim. After Congress passed the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub L. 104-132, § 104, an application for a writ of habeas corpus is not to be granted with regards to any claim that was adjudicated on the merits by the state court unless:

the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). When the state court fails to address a petitioner's claim, the appellate court cannot determine if the

decision is an unreasonable application of federal law. *Doan v. Brigano*, 237 F.3d 722, 730 (6th Cir. 2001). Instead the court is left with the option of evaluating the decision on whether it was contrary to established federal law. *Id.* Unless the state court decision was contrary to clearly established United States Supreme Court precedent, we must uphold the state court decision. *Id.*

Appellant argues because the state court did not even mention his claim, we should conclude it failed to adjudicate his claim on the merits and apply a de novo review to his claim. Several other circuits have adopted this view and found when a state court fails to address a petitioner's federal claim at all, the appellate court should apply the pre-AEDPA de novo standard of review. *See DiBenedetto v. Hall*, 272 F.3d 1 (1st Cir. 2001); *Hameen v. Delaware*, 212 F.3d 226 (3d Cir. 2000). These circuits reason when a state court fails to even mention a petitioner's federal claims, it cannot be said the petitioner's federal constitutional issues have been "adjudicated on the merits." *DiBenedetto*, 272 F.3d at 6.

Whether these courts' holdings are correct, however, is not for this panel to decide. We are bound by the decision in *Doan* because the appellate court was presented with the exact situation presented by the current appeal. In *Doan*, the state court failed to mention, let alone adjudicate, the petitioner's federal claim. 237 F.3d at 730-31. However, the *Doan* court still applied the AEDPA standard in reviewing the petitioner's claim. *Id.* Even if the *Doan* court did not explain its reasoning for adopting its position, this panel is still bound by its decision. *Schoenberger v. Russell*, 290 F.3d 831, 837 (6th Cir. 2002). Accordingly, we review the Kentucky Supreme Court's decision to see if it was contrary to established Supreme Court precedent. *Doan*, 237 F.3d at 730-31.

Appellant argues Smith's identification of one of the voices he heard in the apartment as belonging to a black male violated Appellant's right to due process under the 14th Amendment. He contends the Kentucky Supreme Court's

holding that a witness could identify a voice as being of a particular race or nationality, so long as the witness is personally familiar with the general characteristics, accents or speech patterns of the race or nationality in question pursuant to the collective facts rule of the Kentucky Rules of Evidence violates the 14th Amendment to the Constitution in that such identification is inherently unreliable. He also contends any identification of an individual's race by the sound of his voice is unconstitutionally prejudicial.

The issue of racial voice identification is one of first impression in this Circuit. It is an issue that has received little attention in state courts let alone the Supreme Court. Nevertheless, the Kentucky Supreme Court could have run afoul of established federal law even though the factual situation in this case has not yet been seen by the Supreme Court. As the Supreme Court explained "a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts our prior holdings *or* if it reaches a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66, 120 S. Ct. 2113, 2119-20, 147 L. Ed. 2d 125 (2000) (emphasis added).

Appellant argues the Kentucky Supreme Court's decision to allow a racial voice identification into evidence contradicted the prior Supreme Court holdings that have recognized "the likelihood of misidentification . . . violates the defendant's due process rights." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 381, 34 L. Ed. 2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 112, 97 S. Ct. 2243, 2252, 53 L. Ed. 2d 140 (1977)). Appellant appears to be arguing *Neil* and *Manson* stand for the proposition that any identification procedure that appears unreliable for any reason is unconstitutional. We do not believe these cases extend that far. In *Neil* and *Manson* the defendants were subjected to a suggestive identification procedure. *See Neil*, 409 U.S. at 198, 93 S. Ct. at 381; *Manson*, 432 U.S. at 112, 97 S. Ct. at 2252. The concern of the Court in these cases was the pretrial

procedures used by law enforcement were so "impermissibly suggestive as to give rise to the likelihood of misidentification." *Ledbetter*, 35 F.3d at 1070 (quotations omitted). In the present case no suggestive procedures were used to identify Appellant. In fact, Smith never even identified Appellant at all. He merely stated his opinion the person he heard over the wire communication sounded black. Absent a broad reading of *Neil* and *Manson*, Appellant has not presented any Supreme Court authority to support his argument.

Even if we were to review Appellant's misidentification argument without the limitation of Supreme Court precedent, it is not clear he would prevail. First, the limited research conducted on the issue of racial voice identification indicates this type of identification is extremely reliable. Thomas Purnell, William Idsardi & John Baugh, *Perceptual and Phonetic Experiments on American English Dialect Identification*, 18 J. Language & Soc. Psychol., 10-30 (1999). In a study involving 421 graduate and undergraduate students at Stanford University, the participants were asked to identify the racial or ethnic background of twenty different speakers. *Id.* at 19. They correctly identified the African-American males' voices approximately 88% of the time. *Id*. at 20.

Second, the vast majority of courts that have addressed the admissibility of racial voice identification evidence have concluded it is admissible, which indicates those courts did not believe it was inherently unreliable. *See United States v. Card*, 86 F. Supp. 2d 1115 (D. Utah 2000) (testimony perpetrator of robberies sounded like African-American admissible); *State v. Smith*, 415 S.E.2d 409 (S.C. Ct. App. 1992) (allowing identification of a voice as being that of a white male); *State v. Kinard*, 696 P.2d 603 (Wash. Ct. App. 1985) (testimony a robber sounded black was admissible); *Rhea v. State*, 147 S.W. 463 (Ark. 1912) (witness allowed to testify voice he had heard in a crowd of African-Americans was a white man's voice). Likewise, we cannot conclude the mere identification of the race of an individual by the sound of his voice would be inherently unreliable.

Appellant also argues even if the voice identification was not unreliable, it was certainly unconstitutionally prejudicial. Certainly the use of a defendant's race in his criminal trial can be inappropriately prejudicial in some circumstances. *See McCleskey v. Kemp,* 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (holding Constitution prohibits prosecution from making racially based arguments). However, we reject the notion the mere identification of an individual's race by his voice will always result in unconstitutional prejudice. To so hold would result in the perverse result of not allowing the best evidence to be presented to the jury when the danger of impermissible prejudice is remote. For example, under the theory propounded by Appellant the trial court would be required to exclude a rape victim's testimony about the race of her attacker when she did not see his face but only heard his voice. *See Kinard*, 696 P.2d at 605 (woman allowed to testify the voice of her attacker sounded black). Such probative evidence should not be excluded simply because of an ambiguous concern over the possibility of racial prejudice.

This does not mean a defendant would always be precluded from showing a racial voice identification was improper. He would simply have to demonstrate how the identification was inappropriately prejudicial in his particular case. Appellant, however, has not explained how the voice identification was used inappropriately in this case. For example, we have no evidence that the prosecutor used the voice identification to inflame the jury. There is no evidence before us the judge made inappropriate references to the identification. Indeed, in this particular case the officer making the racial identification did not even state it was Appellant he heard. He simply identified the race of the voice he heard engaging in the crime. *State v. McDaniel*, 392 S.W.2d 310, 315 (Mo. 1965) (allowing racial voice identification testimony because the identification was of the race of those who had committed the crime, not necessarily the defendant's race). Under the facts of this case we cannot say the racial voice identification by Smith was unconstitutionally prejudicial.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's decision to deny Appellant's motion for a writ of habeas corpus.