*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0299p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

HENRY MALDONADO,

　　　　　　*Petitioner-Appellant,*

　　　*v.*

JULIUS WILSON, Warden,

　　　　　　*Respondent-Appellee.*

No. 03-4528

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-01566—Kathleen McDonald O'Malley, District Judge.

Argued: March 18, 2005

Decided and Filed: July 15, 2005

Before: MERRITT and ROGERS, Circuit Judges; HOOD, Chief District Judge.[*]

---

**COUNSEL**

**ARGUED:** Theresa G. Haire, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee. **ON BRIEF:** Theresa G. Haire, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

　　ROGERS, Circuit Judge. Henry Maldonado appeals the district court's denial of his petition for a writ of habeas corpus. Maldonado was convicted in Ohio of murder, tampering with evidence, and abuse of a corpse. The district court granted a certificate of appealability on two related issues: whether the state court's admission of a police officer's testimony that the chief prosecution witness passed a "test" for truthfulness rendered Maldonado's trial fundamentally unfair in violation of the Due Process Clause; and whether the prosecutor improperly vouched for the chief prosecution witness's credibility by eliciting the police officer's testimony about the test. While admission of the comment may have been improper, the Ohio Court of Appeals' rejection of Maldonado's due

---

[*] The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

process claim was not contrary to or an unreasonable application of clearly established federal law. Maldonado has forfeited his prosecutorial misconduct claim. Therefore, we affirm.

I.       *Background*

This court presumes the state court's findings of fact to be correct. 28 U.S.C. § 2254(e)(1) (2005). The Ohio Court of Appeals recited the facts underlying Maldonado's conviction as follows:

> On November 23, 1999, at approximately 8 p.m., firefighters discovered the body of fifteen-year-old Virginia Velez in a field behind a residential neighborhood in Lorain, Ohio. The body was burned. The coroner later determined that Virginia had been strangled first, then her body was set on fire. Just two hours before the grisly discovery, Virginia was with two girlfriends at one girl's home. Virginia told the girls that she was going to see her sometimes-boyfriend Henry Maldonado, who lived a few blocks away. The field where Virginia's body was found was directly behind Maldonado's house.
>
> The police investigation included interviews with a number of persons who knew both Virginia and Maldonado. The police also received a tip that Maldonado was seen depositing a garbage bag behind a local convenience store, possibly disposing of it in the dumpster. It contained certain items belonging to Virginia. The police uncovered sufficient evidence implicating Maldonado that a grand jury indicted him on two counts of murder, one count of aggravated murder, abuse of a corpse, and tampering with the evidence.
>
> On December 11, 2000, the case against Maldonado proceeded to a jury trial. Numerous witnesses appeared on behalf of the state, including the coroner, police officers, several of Virginia's relatives, and a number of teenage friends of Maldonado and Virginia. Maldonado offered nothing in his own defense. The jury returned guilty verdicts on all counts. The aggravated murder count and two counts of murder were merged. The trial court sentenced Maldonado to consecutive terms of twenty years to life for aggravated murder, three years for tampering with evidence and twelve months for abuse of a corpse.

*State v. Maldonado*, No. 01-CA-007759, 2001 WL 1044078, at *1 (Ohio Ct. App. Sept. 12, 2001).

Testimony about Tyrone Price, the state's key witness, forms the basis for the due process claims on which the district court granted a certificate of appealability. The Ohio Court of Appeals found that Price entered a plea agreement under which Ohio agreed to prosecute Price as a juvenile and to charge Price only with tampering with evidence, in return for Price's testifying against Maldonado. *Id.* at *2. Price had to pass a computer voice stress analysis test ("CVSA") in order to enter the agreement. *Id.* Price testified at trial that he pled guilty to tampering with evidence and was sentenced to confinement in a juvenile facility. At issue here is whether a police detective's testimony that he believed Price because Price "was tested," violated Maldonado's due process rights.

On direct examination at trial, Price testified that he went to Maldonado's house to watch movies on the night of the murder. When Maldonado went to the basement in the middle of a movie, Price followed him. Price knew that Virginia was there when he got to the basement, because he heard the two talking. Price watched as Maldonado strangled Virginia with shoelaces; it took several minutes. Maldonado asked Price to help him take the body outside, and Price

refused.  Maldonado put the body in a garbage can and dragged it outside.  Price followed him.  The garbage can tipped over once Maldonado and Price reached the edge of a woods behind the house.  Maldonado asked Price to help him move the garbage can, and Price did this.  Price saw Maldonado rub alcohol on the victim's body, and then Price ran home.

The Ohio Court of Appeals made the following findings of fact concerning the disputed admission of the detective's testimony:

> The state's strongest evidence against Maldonado came from the testimony of Tyrone Price, a teenage friend of Maldonado.  Price testified that he saw Maldonado strangle Virginia, drag the body into the open field, and douse it with rubbing alcohol.  Price initially told police investigators two different stories, neither of which implicated Maldonado in the murder.  Price finally cooperated with police as part of a plea agreement. . . .  As part of the plea agreement, Price had to pass a voice stress test to establish his truthfulness.
>
> During his testimony Price began to state, without solicitation, that he had taken the polygraph test.[1]  Defense counsel objected when Price said, "I took a lie —."  The objection was sustained and the statement was stricken.  Later, a detective [Detective Moskal] testified about his investigation in the case.  Defense counsel strongly challenged the quality of Price's testimony, and suggested that the police prematurely identified Maldonado as the primary suspect, notwithstanding Price's prior contradictory statements to police.[2]  In an attempt to restore the detective's

---

[1]Maldonado's counsel on cross-examination impeached Price's credibility by questioning Price about the discrepancies between Price's testimony and his previous statements to a police detective.  Defense counsel put particular emphasis in cross-examination on Price's differing accounts concerning how, when, and where the victim's clothes were removed.  The cross-examination included this exchange:

| | |
|---|---|
| Q: | You go to the adult system on a murder, it ain't til you're 21, is it? |
| A: | No, it's not. |
| Q: | How long you talking about then? |
| A: | Rest of your life. |
| Q: | So then you got yourself a lawyer and he set up a meeting for you and Det. Moskal, Mr. Rosenbaum, and you started to give a little bit more of the truth? |
| A: | Yes, I did. |
| | . . . |
| Q: | So you told them that you weren't there when the killing took place, but Henry told you about it? |
| A: | That's right. |
| Q: | That's what you told them.  And you figured that was going to be good enough, right? |
| A: | Right. |
| Q: | You were going to get your little deal, and, once you got your little deal, then you didn't have to worry about it anymore? |
| A: | No. |
| Q: | Did you get out of the detention home after you told them that little story? |
| A: | No. |
| Q: | So then you decided you were going to tell [the police] another story, right? |
| A: | I was – I took a lie – |

Defense counsel then interrupted Price, and the state objected to the interruption.  After a sidebar conference, the court sustained an objection to Price's volunteering information about the test.  Price never finished his sentence.

[2]When the prosecution requested at sidebar to question Moskal about having administered a CVSA test to Price, the court stated, "I don't believe the CVSA test results are going to come in, but I think there's enough of an opportunity of an open door from the Defendant's perspective in that he really did rely solely upon [*sic*] his things, so I'll allow some latitude. . . ."  The re-direct included this exchange:

credibility, the prosecution announced at sidebar its intention to ask [Moskal] on re-direct if he believed Price's story and why.

> Defense counsel strongly objected to the prosecution's announced intention to question the detective about the methods he used to corroborate Price's story. The court allowed this line of questioning to proceed. The detective stated that he believed Price's third interview which incriminated Maldonado, "[b]ecause he was tested." Defense counsel objected, but the court overruled the objection. After a sidebar, the court refused to strike the testimony.

*Maldonado,* 2001 WL 1044078 at *3.

On direct appeal, Maldonado stated as his fifth assignment of error, "The trial court erred in allowing the state to elicit testimony regarding the fact that Tyrone Price had taken a [CVSA] test to determine whether or not he was telling the truth and the prosecutor committed misconduct when he elicited testimony vouching for the credibility of state's witness Tyrone Price." Maldonado argued both that evidence about the CVSA was inadmissible under Ohio law, and that "[t]he trial court's failure to exclude this testimony violated Mr. Maldonado's constitutional due process rights to a fair trial." The Ohio Court of Appeals affirmed the conviction. The court read the prosecution decision to present evidence concerning Price's taking the CVSA, as an attempt to rehabilitate Detective Moskal's credibility. *Id.* at *3. The court stated that Moskal's testimony that he believed Price's last account because he was tested, "implied that Price passed the test and the police then found his story sufficiently credible to investigate Maldonado for the murder." *Id.* The court stated that "the better practice would be to sustain the objection and strike the detective's statement that Price was tested." *Id.* Nonetheless, the court held, it could not conclude that "the brief mention of

---

Q:      Now, when Mr. Bradley first asked you about Tyrone Price's statement and your determination as to when he was lying and when he wasn't, he asked you if that was partially based upon his statement?
A:      Yes.
Q:      And then he later got you to say that it was based on that statement, which is more accurate, and why?
A:      One more time with that, please.
Q:      Well, how do we know that [Price] is telling the truth? Did we take precautions to verify that?
A:      Yes, we did.
        [Defense counsel]:        Objection.
        The Court:                Overruled.
Q:      [Defense counsel] is at least inferring that . . . that you went over [Price's] statement with him until he got it straight?
A:      That's not correct.
Q:      Did [Price] --
        The Court:        That would be overruled.
Q:      Did [Price] lie to you?
A:      At the beginning, yes.
Q:      And you were able to confront him with those lies through various means and determine --
A:      Yes.
Q:      – what the truth was and what it wasn't?
A:      Yes.
Q:      Do you believe everything he told you to this day?
A:      I do.
Q:      Everything?
A:      No, just the last interview is what I believe.
Q:      And why do you believe that?
A:      Because he was tested.
        [Defense counsel]:        Objection.
        The Court:                Overrruled.

the test, without further explanation or detail, was prejudicial." *Id.* The court did not address Maldonado's prosecutorial misconduct claim. The Ohio Supreme Court denied review of the case.

Maldonado petitioned for a writ of habeas corpus on August 9, 2002, in the United States District Court for the Northern District of Ohio. The district court adopted a magistrate judge's recommendation that the petition be dismissed. With regard to the due process claims at issue here, the district court found that the state court evidence ruling did not deprive Maldonado of a fundamentally fair trial. It decided that the Ohio Court of Appeals correctly "concluded that the wealth of evidence against Maldonado rendered the trial court's erroneous evidentiary ruling harmless." The Ohio Court of Appeals "reasonably applied federal constitutional law in reaching [its] conclusions," the district court held. The district court treated Maldonado's improper vouching claim only in a footnote, observing that the same evidentiary error—admitting testimony about Price's having been tested—gave rise to both due process claims. The court concluded, "The fact that Maldonado analyzes this single evidentiary error from two angles does not alter the Court's conclusion that the admission of this testimony does not warrant" a grant of the habeas petition.

The district court granted a certificate of appealability on Maldonado's claims that his due process rights were violated when the trial court admitted Moskal's testimony about having tested Price, and when the prosecutor elicited the testimony.

II.       *Standard of Review*

This court reviews de novo the district court's decision to deny a petition for habeas corpus. *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir. 2001). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, this court reviews deferentially state court decisions affirming the conviction of a habeas petitioner. State court determinations of fact "shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With regard to any habeas claim adjudicated on the merits in state court, the federal court may not grant a petition for habeas corpus unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413.

A modified form of AEDPA deference applies to Maldonado's claim that the state court's admission of Moskal's testimony about having tested Price deprived Maldonado of due process. Maldonado's brief before the Ohio Court of Appeals argued that the trial court's admission of Moskal's comment violated both Ohio evidence law and the Due Process Clause. The Ohio Court of Appeals ruled that "the better practice would be to sustain the objection and strike the detective's statement," but it concluded that the brief mention of the test was not prejudicial. The Ohio Court of Appeals did not use the terms "due process" or "fundamentally unfair"; the court appeared to decide the issue solely on the basis of state evidence law.[3] 2001 WL 1044078 at *3.

---

[3] Ohio courts, after determining that a trial court improperly admitted evidence, then address "whether the admission . . . constituted prejudicial error." *State v. Rowe*, 589 N.E.2d 394, 404 (Ohio Ct. App. 1990). The prejudice inquiry determines whether reversal of the conviction is warranted. *Id.* The Ohio Court of Appeals has cited five factors relevant to the prejudice inquiry in cases involving improper admission of polygraph evidence:

In *Howard v. Bouchard,* 405 F.3d 459 (6th Cir. 2005), this court held that a modified form of AEDPA deference applied in a setting similar to this case. In *Howard*, the petitioner argued that admission of a prosecution witness's identification testimony violated state evidence law and the Due Process Clause. The state appeals court had held that the testimony was admissible and, even if it were not, the error was "harmless beyond a reasonable doubt." *Id.* at 468. As here, the state court in *Howard* was silent as to whether its harmless error finding was rooted in state evidence law or in federal constitutional law. *Id.* at 469. This court applied the form of AEDPA deference articulated in *Harris v. Stovall,* 212 F.3d 940 (6th Cir. 2000). *Harris* held that when a state court "decides a constitutional issue by form order or without extended discussion," the habeas court must conduct an independent review of the record and applicable law. *Id.* at 943 n.1. Ultimately, however, the inquiry remains the AEDPA standard of whether the state court result is contrary to or unreasonably applies clearly established federal law. *Id.* at 943. This court in *Clifford v. Chandler,* 333 F.3d 724, 730 (6th Cir. 2003), as in *Howard*, applied AEDPA deference where the petitioner had appealed a state court evidentiary ruling both as a state evidence law error and as a due process violation. In *Clifford,* the state's highest court had ruled only that the trial court correctly applied state evidence law. *Id.* at 729.

Our conclusion that AEDPA deference applies is unaffected by the abrogation of *Clifford*. This court held in *Maples v. Steagall,* 340 F.3d 433, 437 (6th Cir. 2003), that "[b]oth *Clifford* and [*Doan v. Brigano,* 237 F.3d 722 (6th Cir. 2001)] were abrogated by *Wiggins v. Smith*, 539 U.S. 510 (2003)." In *Maples*, the state court had summarily rejected the petitioner's ineffective assistance of counsel claim; this court applied de novo review, concluding that the claim was not "adjudicated on the merits in state court." *Id.* at 435, 437. *Howard*, in applying *Harris*, did not distinguish *Clifford*. Although *Clifford* is no longer good law (and therefore, by implication, *Maples* mandates that de novo review apply in a *Clifford* situation), *Clifford* is sufficiently distinguishable from this case that applying AEDPA deference does not violate this court's precedent. In *Clifford,* the highest state court found that the trial court did not err, under state evidence law, in admitting the challenged evidence. 333 F.3d at 729. It did not address the due process aspects of the challenge. In this case and *Howard*, on the other hand, the state court either found that the evidence was improperly admitted and proceeded to a "prejudice" or "harmless error" analysis; or found that the trial court properly admitted the evidence, but made findings in the alternative on harmless error. In each case, the defendant had presented a constitutional claim, and the court's prejudice inquiry bore some similarity to a determination, under the Due Process Clauses of the Fifth and Fourteenth Amendments, of whether the admission of the challenged evidence rendered the trial fundamentally unfair. Therefore, here, as in *Howard*, modified AEDPA deference is appropriate. This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law. *Howard*, 405 F.3d at 467 (citing *Harris*, 212 F.3d at 943).

---

(1) [w]hether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.

*Id.* (quoting *People v. Rocha,* 312 N.W.2d 657, 661 (Mich. App. 1981)). *Rowe,* on which the Ohio Court of Appeals relied in finding that Maldonado's argument lacked merit, does not equate the prejudice inquiry under Ohio law with the question of whether the defendant received a fundamentally unfair trial under the Due Process Clause. *See id.* at 404. However, other Ohio cases, some of which are cited in *Rowe*, do make this connection. *See State v. Hegel,* 222 N.E.2d 666, 669 (Ohio Ct. App. 1964).

### III.       *The Admission of Moskal's Testimony*

Because the Supreme Court has not held that admission of testimony relating to a truth test renders a trial fundamentally unfair, the Ohio Court of Appeals' decision to uphold Maldonado's conviction, despite the arguably improper admission of Moskal's statement about having tested Price, was not contrary to or an unreasonable application of federal law.

The Due Process Clause provides a remedy when the admission of unduly prejudicial evidence renders a trial fundamentally unfair. *Payne v. Tenn.,* 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986)).  On the other hand, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The Ohio Court of Appeals indicated that the trial court misapplied Ohio law when it overruled defense counsel's objection to Detective Moskal's statement that he believed Price because Price "was tested."[4]  Nonetheless, the state court held, the error did not prejudice the proceedings.  The question before this court is whether, regardless of the propriety under Ohio law of admitting Moskal's statement, the statement rendered the trial fundamentally unfair.  *Payne,* 501 U.S. at 825; *Moore v. Tate*, 882 F.2d 1107, 1109 (6th Cir. 1989).

The Ohio Court of Appeals' decision was not unreasonable under the AEDPA standard.  The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments.  Further, we are aware of no federal court of appeals that has found a due process violation warranting a grant of habeas relief under these facts.  Indeed, three circuits have rejected habeas petitioners' claims that testimony about truth testing violated the petitioners' due process rights.  Notably, two reached this conclusion under pre-AEDPA de novo review. *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001) (AEDPA deference); *Cacoperdo v. Demosthenes,* 37 F.3d 504, 510 (9th Cir. 1994) (de novo review); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991) (de novo review).  While these cases are distinguishable from the present one in important respects,[5] they do not imply that testimony regarding truth testing violates due

---

[4]The district court noted, "No one disputes that it was error for the state court to admit the testimony that is at the heart of this claim."  The warden argues, however, that it *did* assert proper application of Ohio evidence law in its answer / return of writ, where it stated that Maldonado's petition "is designed to create the specter of error where none occurred." The prosecution asked Moskal about "what steps were taken to verify Price's account" only as a way of rehabilitating Moskal, in response to defense counsel's impeachment of Moskal's credibility, the warden argues.  Appellee's Br. at 19.  Further, the warden contends that Moskal's reference to Price's having been "tested," because it was brief , not repeated, and did not disclose the results, was innocuous. *Id.* at 22.

Ohio law appears to lend little support to these arguments.  Ohio allows the results of a polygraph examination to be admitted if numerous conditions are satisfied, including the defendant's stipulating to their admission. *State v. Souel,* 372 N.E.2d 1318, 1323 (Ohio 1978).  The rule does not appear to distinguish between admitting results of the test to prove the guilt of the accused, and admitting them to accredit a witness.  The same standard applies to the testing of defendants and to the testing of prosecution witnesses. *State v. Rowe,* 589 N.E.2d 394, 404 (Ohio Ct. App. 1990).  The mere mention of a witness's having taken a lie detector test—not just admission of test results—may be prejudicial error. *State v. Smith,* 178 N.E.2d 605, 607 (Ohio Ct. App. 1960).  The Ohio Court of Appeals stated that Moskal's citing the test as a reason he believed Price's last story strongly implied that Price had passed the test.  2001 WL 1044078 at *3. While the reference was brief, it formed the centerpiece of the prosecution's re-direct.

[5]Two principal circumstances supported these courts' holding the trial to have been  fundamentally fair: (1) testimony about the test did not divulge the results and therefore did not play a key role in rehabilitating or discrediting a witness, *see Weston*, 272 F.3d at 1113; *Cacoperdo*, 37 F.3d at 510; *Escobar,* 943 F.2d at 720; and (2) the court struck the testimony or offered to give a corrective instruction to the jury, *see Cacoperdo*, 37 F.3d at 510.  In contrast, Moskal's comment not only disclosed that Price took a test, but also strongly implied that the test proved Price to be truthful in his final version of the facts behind the murder—the version that most strongly implicated Maldonado. Moskal stated that Price was credible *because* he was tested.  With forewarning of the prosecution's plan to question Moskal about the test, the trial court stated in a sidebar conference that it would "allow some latitude" for questioning about the test but would not permit the results to be admitted.  Therefore, the prosecutor structured his questions ("Did

process. Finding a due process violation here would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests. No Supreme Court precedent demands this result, and the state court's decision therefore was not unreasonable under 28 U.S.C. § 2254(d).

The district court therefore properly denied Maldonado's due process claim.

## IV.     *Prosecutorial Misconduct*

The district court granted a certificate of appealability on ground one of Maldonado's habeas petition, which includes his claims both that the trial court improperly admitted Moskal's testimony, and that the prosecutor improperly vouched for Price's credibility by eliciting testimony about Moskal's having tested Price. In his brief on appeal, Maldonado does not assert a due process violation based on prosecutorial misconduct as a ground for habeas relief. Instead, he refers to this claim only indirectly. *See* Appellant's Br. at 12 ("Moreover, both the investigating detective, Detective Moskal, and the prosecutor vouched for Price's veracity."). Therefore, he has forfeited this claim on appeal. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . .").

For the foregoing reasons, we AFFIRM the district court's denial of Maldonado's petition.

---

we take precautions to verify that?" "And why do you believe that?") in order to imply that Price had "passed" a truth test. This situation stands in contrast to cases in which a polygraph test was mentioned merely inadvertently or in passing. *See Weston*, 272 F.3d at 1113; *Cacoperdo*, 37 F.3d at 510. Further, testimony about Price's having been tested played a central role in the prosecution's strategy. Price's admission at trial that he had lied repeatedly to the police undermined the credibility of his eyewitness account, and therefore formed the main obstacle to the prosecution's theory of the case. Moskal's comment served to rehabilitate the credibility of the prosecution's key witness. Finally, unlike in *Cacoperdo*, the trial court overruled the defendant's objection without offering to strike the evidence or to give a curative instruction to the jury.