**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0845n.06

No. 10-3982

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Dec 15, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| Leopold Guidry, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Michael Sheets, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT and MOORE, Circuit Judges and MAYS, District Judge.[*]

**MERRITT, Circuit Judge.**   Petitioner Leopold Guidry appeals the denial of his habeas corpus petition brought under 28 U.S.C. § 2254 (2006).  He was convicted in state court of causing the death of Falicia Guidry, his daughter, during the course of a felonious assault, in violation of Ohio Revised Code § 2903.02(B).  In his petition, he alleges that the state court violated his federal due process rights by refusing to overturn his conviction and grant him a new trial when confronted with the post-trial recantation and confession of Falicia's mother, Alicia Hanson.  We now affirm the district court's denial of Guidry's habeas petition.

---

[*] The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

## I. Background

Falicia was the daughter of Guidry and Hanson and lived with her parents and her older sister Ashley.[1] On November 27, 2003, when she was less than three months old, Falicia died from blunt force trauma to the head sustained some two days before. A medical exam revealed that Falicia also had older injuries, including broken ribs and a separate head injury. At first Guidry told police that, on November 25 (the date of the fatal head injury), Hanson was asleep and he was in the bathroom when Falicia first experienced distress. When asked to explain the injury, Guidry theorized that someone could have stepped on Falicia soon after her birth as she slept on the floor at a friend's house. He subsequently proposed several alternative explanations for the head injury, each of which left responsibility with a different actor. During these interviews, Guidry frequently reiterated that he often had trouble remembering important events and details.

Guidry also intermittently remarked that Hanson had previously been too rough with Falicia. Hanson herself testified at trial, before recanting on cross examination, that she had previously, but not on the 25th, shaken and punched Falicia in the head. Towards the end of his police interviews, Guidry implied that Hanson may have injured the child on November 25 while he was in the bathroom. To support this account, Guidry informed police that Hanson had herself been abused as a child. Guidry, however, did not adhere to this later version and eventually confessed that he hit Falicia because her crying was interrupting the movie he was watching.

---

[1] The Ohio Court of Appeals most fully articulates the facts of this case in *State v. Guidry*, Nos. 04CA36, 06CA36, 2007 WL 2429930, at *1-6 (Ohio Ct. App. Aug. 20, 2007).

The state of Ohio charged and, after a jury trial, convicted Guidry on July 22, 2004. Prior to sentencing, Guidry filed a motion for a new trial which he renewed after he was sentenced to life in prison with the possibility of parole after fifteen years. Both motions relied on Hanson's post-trial confessions to accidentally killing Falicia. Guidry alleged that these confessions undermined her testimony at trial in which she swore that she was asleep at the time of the crime, thereby strongly implicating Guidry as only adult with the opportunity to harm Falicia.

The Washington County Court of Common Pleas held a hearing in two parts on Guidry's motion. In part because of her equivocation during these hearings, the court ultimately found Hanson's confessions not credible and denied both motions for a new trial on September 27, 2006. The Ohio Court of Appeals affirmed the denial of Guidry's motions, and the Supreme Court denied review. Guidry then filed a petition for habeas corpus under § 2254. The district judge, adopting the magistrate judge's recommendation, denied the petition on June 30, 2010. This appeal followed.

## II. Discussion

### A. Standard of Review

We review the district court's decision in a habeas proceeding *de novo*. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Petitions brought under § 2254 are typically subject to the Antiterrorism and Effective Death Penalty Act of 1995 (AEDPA), which prohibits overturning a state court decision on the merits of a claim unless it is "contrary to" or "an unreasonable application of, clearly established federal law . . .." 28 U.S.C. § 2254(d). The Ohio Court of Appeals authored the last reasoned state court opinion but did not discuss Guidry's federal constitutional claim, which he raised, briefly, in both his assignment of error and his reply brief before the state appellate court.

The magistrate judge interpreted this omission to mean that he should conduct his review of Guidry's federal claim either *de novo* or with "modified AEDPA deference" *See Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005). Assuming, without deciding, that Guidry's federal claim is properly before us because he has fully exhausted his state post-conviction remedies as AEDPA requires, the applicable standard of federal court review is ultimately unimportant since he has no basis for relief on the merits.

### B. Guidry's Due Process Claim is Reviewable

The State of Ohio first contends that Guidry's due process claim is not cognizable in habeas because it challenges the state's post-conviction proceedings rather than his conviction or continued detention. *See Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) (dismissing habeas petition alleging ineffective assistance of counsel during post-conviction proceedings because the "writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . .."). But Guidry is not challenging the procedures used during his motion for a new trial, but instead is attacking his conviction because it was secured through false testimony. The due process violation, if any, was the state court's refusal to overturn this allegedly improper conviction. As the magistrate judge observed, district courts in this circuit have reviewed petitions based on the state's failure to grant a motion for a new trial in the face of a witness recanting his testimony at trial. *See, e.g., Austin v. Mack*, No. 1:03CV323, 2005 WL 1652533 (S.D. Ohio July 11, 2005). Thus, review of Guidry's due process claim is proper.

### C. The Due Process Claim

Guidry's claim faces two, ultimately insurmountable, hurdles to success. First, because his claim asserts only a due process violation, and not an independent constitutional infirmity, at best it can succeed only if the denial of the motion for a new trial implicated "fundamental fairness." *Austin*, 2005 WL 1652533, at *8 (quoting *United States ex rel. Guillen v. DeRobertis*, 580 F. Supp. 1551, 1556 (N.D. Ill. 1984)). This standard is all the more daunting because the success of Guidry's claim depends on a federal court making a factual determination that credits Hanson's confessions at the expense of her prior trial testimony. But because the state court, when considering Guidry's motion for a new trial, made the opposite finding, we must presume that finding is correct unless it is overcome "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Second, when arrayed against these imposing standards, Guidry's claim for relief is weak. Hanson, unlike at trial, was not under oath when she confessed either in her letter to Guidry's attorney or to her fellow inmate Kinney. Guidry himself essentially dictated Hanson's letter in a series of prison phone calls. He also convinced her to confess by promising that she would not face prosecution and by implying that, soon after his release, the reunited family would flee to Mexico. These details reinforce our natural distrust of after-the-fact witness recantations. *See United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964). Yet Hanson's confessions were still equivocal. Since Guidry has not shown by clear and convincing evidence that the state court's decision not to credit Hanson's post-trial confessions was incorrect, we must honor it. Without a finding that Hanson's trial testimony was false, Guidry's claim that the state court violated his due process rights by

allowing a conviction based on false testimony to stand collapses. Accordingly, we affirm the

district court's judgment.