*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0389p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

GREGORY L. BEY,

*Petitioner-Appellant,*

*v.*

No. 04-4289

MARGARET BAGLEY, Warden,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 01-07385—Paul R. Matia, District Judge.

Argued: December 5, 2006

Decided and Filed: September 25, 2007

Before: BATCHELDER, ROGERS, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Richard M. Kerger, KERGER & ASSOCIATES, Toledo, Ohio, for Appellant. Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Richard M. Kerger, Kimberly A. Conklin, KERGER & ASSOCIATES, Toledo, Ohio, Ann M. Baronas, LAW OFFICES OF ANN M. BARONAS, Toledo, Ohio, for Appellant. Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. Petitioner Gregory L. Bey appeals the district court's dismissal of his petition for a writ of habeas corpus. Bey argues that the state trial court violated the United States Constitution by admitting certain "other acts" evidence at trial, over his objection. We find Bey's claim meritless and **AFFIRM** the judgment of the district court.

**I.**

In August 1992, police officers in Toledo, Ohio, responded to the scene of an apparent murder/robbery. At the scene, the body of Dale Pinkelman was lying on the floor of his store, Pinkelman's Collectibles, dead from a single stab wound to the chest. Pinkelman's body was in a peculiar state — his pants and shoes had been removed, such that he was lying in his underwear and socks. His shoes were placed neatly next to his body, but his pants were missing and, in fact, were never recovered. The police discovered valuable items on Pinkelman's person, including a gold

1

necklace, rings, and two watches, but there were other items of value for which the police could not account, including merchandise from the store, cash from the register, and Pinkelman's car from the parking lot. The police also discovered a fingerprint and a palm print on a glass display case approximately three feet from Pinkelman's body, for which they could not identify an owner. Despite the peculiar circumstances of the crime and the promising discovery of the finger- and palm prints, the police had no suspect for the apparent murder/robbery and no solid leads.

A few months later, in November 1992, the police found the body of Peter Mihas on the ground outside his restaurant, the Boardroom Restaurant, dead from several stab wounds to the chest. Mihas's pants had been removed and his shoes were placed neatly next to his body. His jewelry remained on his person. Toledo Detective William Gray immediately recognized the similarities between the Mihas murder/robbery and the unsolved Pinkelman case.[1]

An informant alerted police of Bey's possible involvement with the Mihas murder and when the police confronted Bey with evidence of his guilt, he confessed to murdering and robbing Mihas. Due to the unusual similarities of the crime scenes, the police compared Bey's finger- and palm prints to the unidentified prints found on the glass display case in Pinkelman's store. The prints matched. The police also found Pinkelman's car less than two blocks from Bey's residence. Armed with this evidence, the police questioned Bey concerning the Pinkelman murder. Bey initially denied that he knew Pinkelman and denied having ever been in his store, but later, Bey admitted that he had purchased a watch from Pinkelman's store on credit. Bey also told the police that he had returned to the store and asked Pinkelman for more time to pay for the watch, but Pinkelman had refused and demanded payment. When the officers asked Bey if he had ever harmed Pinkelman or taken his car, Bey replied that he did not remember and asked to terminate the questioning.

The grand jury returned a four-count indictment, charging two counts of aggravated murder and two counts of aggravated robbery. The aggravated-murder charges each contained the same specification, namely, aggravated murder in the course of an aggravated robbery, which, if found beyond a reasonable doubt, would render Bey eligible for the death penalty under Ohio law. *See* Ohio Rev. Code § 2929.04(A)(7). Bey moved to sever the trials, so that the Mihas charges (he had confessed to) would be tried separately from the Pinkelman charges. The court granted the motion.

The State prosecuted the Mihas murder first. The jury convicted Bey of both counts — aggravated murder with the corresponding specification, and aggravated robbery — and recommended life imprisonment with eligibility for parole after thirty years. The court adopted the recommendation and entered judgment. *See State v. Bryant-Bey*, No. L-93-184, 1995 WL 96783 (Ohio Ct. App. March 10, 1995). The State then prosecuted the Pinkelman murder. Prior to trial, Bey moved, pursuant to Ohio R. Evid. 404(B), to exclude "other acts" evidence regarding the Mihas murder. The State opposed the motion and the trial court issued a written, pre-trial order in which it considered Bey's 404(B) argument but denied the motion. The court explained:

> The probative value of the Mihas homicide to prove identity has been clearly established by the State. Both victims were male business owners who were confronted in or near their place of business. In both cases, the perpetrator directed violence to the two men through the use of a knife and inflicted the fatal stab wound to the chest. Further[,] the uniqueness of the removal of the trousers and the shoes

---

[1] To be sure, there were also differences. The crime scenes were several miles apart — Pinkelman's store was located on the outlying northern edge of the city and Mihas's was in a downtown urban area. Pinkelman was stabbed once and the murder weapon (presumably a knife) was never recovered, while Mihas was stabbed multiple times and the knife was left in his body. Pinkelman's body was found inside the store and Mihas's was outside. Pinkelman's store was robbed and Mihas's was not. Pinkelman's car was stolen and Mihas's was not. Pinkelman's pants were never recovered and Mihas's were recovered at the crime scene, not far from the body.

of the two men supports the admissibility of the evidence pursuant to Evidence Rule 404(B) . . . . The State has established the probative value of the other-act evidence by the strong quality of its proof. The 'other act' evidence relating to the homicide of . . . Mihas tends to show . . . 'identity[.'] Said evidence shall be admitted at trial. However, before evidence of the Mihas homicide is introduced at trial and at the close of all the evidence, the Court shall instruct the jury as to the limited purpose of this evidence.

At trial, the State introduced evidence of the Mihas murder. At the request of Bey's trial counsel, the trial court gave curative instructions, instructing the jurors that they were to consider that evidence only for the purpose of determining the identity of the person who had committed the offense for which Bey was being tried. At the conclusion of the evidence, the jury convicted Bey on all counts and specifications, and recommended a sentence of death. The trial court adopted the recommendation and entered judgment. Bey unsuccessfully appealed his conviction and sentence to the court of appeals, *see State v. Bey*, No. L-94-003, 1997 WL 586693 (Ohio Ct. App. Sept. 19, 1997), and to the Ohio Supreme Court, *see State v. Bey*, 709 N.E.2d 484 (Ohio 1999). Thereafter, Bey filed petitions for post-conviction relief in the state courts, and, at least with regard to the Ohio R. Evid. 404(B) issue before us in this appeal, exhausted his state-court remedies.

In October 2001, Bey filed his petition for writ of habeas corpus with the federal district court, asserting twenty-five grounds for relief. In September 2004, the district court denied the petition and refused to grant a certificate of appealability. In November 2005, we granted a certificate of appealability on one issue, namely, Bey's claim that:

> Petitioner's conviction and sentence are in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution in that the trial court erred to the prejudice of Petitioner when it permitted the State to introduce 'other acts' evidence without first conducting an analysis of whether the prejudicial impact of the evidence outweighed its probative value.

In his appellate brief, however, Bey restates the issue thus:

> ISSUE ON APPEAL: Petitioner's conviction and sentence are in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution in that the trial court erred to the prejudice of Petitioner when it permitted the State to introduce 'other acts' evidence which denied him due process of law.

## II.

"We review *de novo* the district court's denial of . . . [a] petition for a writ of habeas corpus." *Clinkscale v. Carter*, 375 F.3d 430, 435 (6th Cir. 2004). Because Bey filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we review his claim under the standards set forth in that statute. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA a federal court may grant a writ of habeas corpus only where the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The [federal] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.*

Bey's statement of the sole issue on appeal differs from the issue on which we granted the certificate of appealability, and from the issues he raised in his habeas petition. Notwithstanding, we will address the claim Bey now puts before us, and, finding it baseless, lay it to rest.

In reconstructing his issue, Bey has separated it into two distinct claims: (1) "The Trial Court Erred to the Prejudice of Petitioner [w]hen It Permitted the Jury to Hear Other Acts Evidence of Petitioner's Previous Homicide Conviction"; and (2) "The State's Use of Other Acts Evidence Deprived Petitioner [o]f [a] Fair Trial [a]s Guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution." We consider the two claims in order.

**A.**

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. As a result, "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (recognizing that a federal habeas court does not rule on "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence"). Otherwise stated, a state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief. *See, e.g.*, *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Bey's first claim is that, by admitting evidence of the Mihas murder, the state court violated Ohio R. Evid. 404(B). This is a claim that the state trial court erred in the application of state law, specifically a ruling on evidence, and standing alone, this claim is simply not cognizable on habeas review. *See Bugh*, 329 F.3d at 512; *Coleman*, 244 F.3d at 542; *Walker*, 703 F.2d at 962. Therefore, to the extent that Bey claims that the trial court's admission of the "other acts" evidence violated Ohio R. Evid. 404(B), he does not provide a cognizable basis for granting habeas relief.

**B.**

Bey's second claim is that, even though the Ohio Supreme Court upheld the admission of the "other acts" evidence as a matter of state evidentiary law, that particular evidence was so prejudicial that its admission nonetheless rendered his entire trial fundamentally unfair, which denied him due process under the Fifth and Fourteenth Amendments. This is Bey's new construction of his proposed habeas issue and by framing it as a constitutional violation he has at least asserted a cognizable habeas claim; however, as a new construction, it was neither squarely presented to the state courts nor squarely addressed by them. In this respect, this claim arrives in a similar procedural posture as the claim raised in *Maldonado v. Wilson*, 416 F.3d 470, 474 (6th Cir. 2005).

In *Maldonado*, the petitioner had challenged the admission of certain evidence on direct appeal, as both a state-law evidentiary error and a violation of due process. *Id.* at 475. The state appellate court affirmed the admission "solely on the basis of state evidentiary laws," finding the evidence non-prejudicial. *Id.* Maldonado sought habeas relief on the theory that admission of the evidence violated due process, i.e., his fundamental right to a fair trial. *Id.* at 474. We explained that, although the state had not addressed the due process claim expressly, "the [state] court's [state-law] prejudice inquiry bore *some similarity* to a determination, under the Due Process Clauses of the Fifth and Fourteenth Amendments, of whether the admission of the challenged evidence rendered the trial fundamentally unfair." *Id.* at 476 (emphasis added). Therefore, we concluded that a "modified AEDPA deference is appropriate." The present case is virtually identical to *Maldonado*. The Ohio Supreme Court conducted a prejudice inquiry and, in ruling that the trial court complied

with Ohio R. Evid. 404(B), found that the Mihas evidence's probative value outweighed any unfair prejudicial impact that it might also have had. *See Bey*, 709 N.E.2d at 491.

Because the Ohio Supreme Court's prejudice inquiry into Bey's state-law claim bears at least "some similarity" to a determination of his current due process claim, we review this claim under *Maldonado*'s modified AEDPA standard, which "requires [us] to conduct a careful review of the record and applicable law, but nonetheless bars [us] from reversing unless the state court's decision is contrary to or an unreasonable application of federal law [i.e., Supreme Court precedent]." *Maldonado*, 416 F.3d at 476; *see also Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006). Furthermore, because the Ohio Supreme Court's prejudice inquiry relied entirely on Ohio law without any reference to federal law, *see Bey*, 709 N.E.2d at 491, we need not consider whether that decision resulted in *an unreasonable application of* federal law. We need only look to the question of whether the Ohio Supreme Court's decision is *contrary to* federal law.

Before delving further into Bey's argument, we should note that Bey has not presented, nor have we discovered, any Supreme Court precedent indicating that a state court violates a criminal defendant's due process rights when it *properly* admits evidence of the defendant's other bad acts. We recognized as much in *Bugh v. Mitchell*, where we held that the state court's admission of "other acts" evidence was not contrary to clearly established Supreme Court precedent, inasmuch as "[*t*]*here is no* clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512 (emphasis added). Therefore, under this circuit's precedent, the Ohio Supreme Court's decision that admission of this evidence was proper — combined with our ordinary inability to reconsider a state court's state-law-based decisions — would appear to defeat Bey's claim.

Thus, Bey is left to argue that regardless of its compliance with state law, the state's action may nonetheless violate due process, and thus be contrary to Supreme Court precedent. This theory offers two possibilities: either the state law (rule) itself contradicts Supreme Court precedent, or the state's application of the law (rule) under the particular circumstances does.

**1.**

With regard to the propriety of the state's evidence rule, the clearly established Supreme Court precedent is, and was at all times relevant to this case, that the states have broad authority over the procedures by which they conduct trials and prosecute criminals. Specifically:

> Preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and we [the Supreme Court, i.e., federal courts] should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, and [a State's] decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quotation marks and edits omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Moreover, the presumption favors the state:

> It is not the State which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather *respondent who must show* that the principle of procedure violated by the rule (and allegedly required by due process) is so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Id.* at 47 (internal quotation marks, citations, and original emphasis omitted; new emphasis added).

This is to say that it was Bey's burden to demonstrate that Ohio Evid. R. 404(B) contradicts Supreme Court precedent and violates a fundamental right. Bey points to the right to a fair trial, a right that no one would argue is anything but fundamental, but offers no authority that even suggests that the law in question — Ohio R. Evid. 404(B) — violates that right. More to the point, Bey has not presented us with, nor have we discovered, any Supreme Court precedent contrary to the effectuation of Ohio's (or any other jurisdiction's) rule for the admission of "other acts" evidence.

**2.**

Bey does not really argue that the Ohio *rule* violates his fundamental right to a fair trial, however. His real argument is that — despite the Ohio Supreme Court's finding of compliance with Ohio Evid. R. 404(b) — the evidence admitted in this case was *so unfairly prejudicial* that "it offends [a] principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *see Montana*, 518 U.S. at 43, i.e., the fundamental right to a fair trial. That is, Bey claims that the "other acts" evidence of the Mihas murder rendered his entire trial fundamentally flawed.

As the Ohio Supreme Court thoroughly explained, the "other acts" evidence was admitted to show identity. *See Bey*, 709 N.E.2d at 491 (citing *State v. Lowe*, 634 N.E.2d 616, 619 (Ohio 1994) ("Other acts may . . . prove identity by establishing a *modus operandi* applicable to the crime with which [the] defendant is charged."). *Modus operandi* evidence generally demonstrates the defendant's involvement in a unique or distinct plan or scheme. *See Lowe*, 634 N.E.2d at 619.

In the present case, the "other acts" evidence was highly probative of the murderer's identity. The unusual facts of the Mihas murder — an offense that Bey confessed to, and was convicted of, committing — were remarkably similar to those of the Pinkelman murder — the offense for which Bey was on trial. Both victims were small business owners whose shops were robbed and who were killed by stab wounds to their chests; both victims were apparently alone when the crimes occurred; the pants of each victim had been removed; the shoes of each victim had been removed and placed neatly next to the victim's body; and the killer did not remove the jewelry from either victim.

To be sure, evidence of the Mihas murder was prejudicial to Bey's defense at his trial for Pinkelman's murder. The peculiar factual similarities between these two crimes strongly suggested Bey's involvement in the Pinkelman murder, and no doubt greatly increased in the minds of the jurors the likelihood that Bey committed that crime. But, *all* evidence tending to prove guilt is prejudicial to a criminal defendant. If it were otherwise, the State would not produce it as evidence and the court would not admit it as relevant. The critical point in this case is that nothing in the record indicates that the prejudice was *unfair*. Defense counsel was fully apprised, well prior to trial, that this evidence would be introduced; counsel had a full and fair opportunity to challenge this evidence, cross-examine witnesses, and present rebuttal evidence. Furthermore, the trial court carefully instructed the jury that it was to consider that evidence only for the limited purpose of determining identity. We presume that the jury followed that instruction, *see, e.g., Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and Bey has provided us with no evidence to call that presumption into question. Finally, as Bey himself has admitted — both in his habeas petition and again here on appeal — the other evidence of Bey's guilt was very strong.

As suggested earlier, the Supreme Court has defined "very narrowly" the category of infractions that violates "fundamental fairness." *Dowling v. United States*, 493 U.S. 342, 352 (1990). In *Dowling*, Reuben Dowling had previously been acquitted of an alleged burglary at the home of one Vena Henry. *Id*. at 344-45. At a subsequent trial on a separate bank robbery charge, however, the government called Ms. Henry to testify that the person who burgled her home had been

wearing a mask and carrying a gun, and that she had unmasked the burglar, whom she positively identified as Dowling. *Id*. Consequently, "[Ms.] Henry's description of Dowling as wearing a mask and carrying a gun similar to the mask worn and the gun carried by the robber of the First Pennsylvania Bank strengthened the Government's identification of Dowling as the bank robber." *Id*. at 345. Dowling was convicted of the bank robbery. *Id*. at 344.

On appeal to the Supreme Court, Dowling argued that this evidence was so unfairly prejudicial that it worked a denial of due process. The Court disagreed, explaining:

> Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly. As we observed in [*United States v.*] *Lovasco*, [431 U.S. 783 (1977)]: Judges are not free, in defining 'due process,' to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

*Id.* at 352-53 (citations, edits, and certain quotation marks omitted). Bey has not pointed us to another case that would serve as controlling Supreme Court precedent, nor has he demonstrated that the circumstances of his case could come within the category of infractions that is so narrow that it excluded the circumstances in *Dowling*. The Ohio Supreme Court's decision in this case is not "contrary to" *Dowling*; it is in direct accordance with *Dowling*.

Bey has offered nothing more than his disagreement with the Ohio Supreme Court's ruling that the "other acts" evidence was properly admitted. Bey's personal disagreement is not cognizable on federal habeas review, inasmuch as it involves no constitutional dimension.

## III.

For the foregoing reasons, we conclude that the decision of the Ohio Supreme Court regarding the admission of this evidence was not contrary to any Supreme Court precedent. Accordingly, we **AFFIRM** the judgment of the district court.