NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0743n.06

No. 07-4216

FILED

**Nov 30, 2010**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MANUEL SANDOVAL, JR.,

      Petitioner-Appellant,

v.

TOLEDO CORRECTIONAL
INSTITUTION; KHELLEH KONTEH,
Warden,

      Respondents-Appellees.

                                  /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    BOGGS, COLE and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  Petitioner Manuel Sandoval, a prisoner proceeding *pro se*, appeals

an order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

asserts that the Ohio trial court proceeding that resulted in his murder conviction violated his right

to due process when the court allowed his wife to testify against him in violation of the Ohio marital

privilege statute.  For the reasons set forth below, we **AFFIRM** the decision of the district court.

BACKGROUND

I.      **Procedural History**

In October 2000, Petitioner Manuel Sandoval ("Sandoval") was convicted by jury of murder, under Ohio Revised Code § 2903.02, for the 1996 death of Alfredo Mendez Perez. Sandoval was sentenced to a term of incarceration of fifteen years to life.

Sandoval appealed his conviction to the Ohio Court of Appeals, claiming that the trial court erred in admitting the testimony of his then ex-wife, Heather Sandoval, in violation of the Ohio marital privilege statute, Ohio Revised Code § 2945.42; and that he received ineffective assistance of counsel. The appellate court denied the appeal and affirmed Sandoval's conviction. *State v. Sandoval*, No. S-00-042, 2002 WL 398331 (Ohio Ct. App. Mar. 15, 2002).

Sandoval, proceeding *pro se*, attempted to file an appeal with the Ohio Supreme Court, but the court dismissed the appeal as untimely. On July 10, 2003, Sandoval filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 2254, on the same grounds originally raised on direct appeal. The district court did not reach the merits of the claims at that time, instead finding that Sandoval's claims were procedurally defaulted for failure to file a timely appeal with the Ohio Supreme Court.

Sandoval appealed and this Court vacated the district court's decision, holding that Sandoval had adequate cause to excuse his failure to file with the Supreme Court. This Court then remanded the case back to district court to be reviewed on its merits. *Sandoval v. Konteh*, Case No. 04-3268 (6th Cir. May 5, 2005). On July 16, 2007, the district court denied Sandoval's habeas petition. *Sandoval v. Toledo Corr. Inst.*, No. 3:03cv7337, 2007 WL 2071908 (N.D. Ohio July 16, 2007).

A certificate of appealability was granted for Sandoval's claim of a violation of the marital privilege only. Sandoval filed a timely appeal to this Court pursuant to 28 U.S.C. § 2253.

## II.      Factual Background

On January 27, 1996, police discovered the body of Alfredo Mendez Perez ("Perez") near a trailer located behind the El Rancho restaurant in Freemont, Ohio.

Perez's murder remained unsolved for several years before enough evidence came to light to indict a suspect. On March 10, 2000, Sandoval was indicted for the aggravated murder of Perez, pursuant to Ohio Revised Code § 2903.01(A). Sandoval was tried before a jury in October 2000, and was found guilty of the lesser included charge of murder.

During the trial, Sandoval's then ex-wife, Heather Sandoval ("Mrs. Sandoval"), agreed to testify to certain events that she claimed occurred around the time of the murder.[1] Mrs. Sandoval's testimony was taken after an objection from Sandoval had been considered and a hearing on it held, outside of the presence of the jury, to determine if Mrs. Sandoval was competent to testify under Ohio Evidence Rule 601(B).[2]

The Ohio Court of Appeals set forth following summary of Mrs. Sandoval's testimony:

She testified that sometime around Christmas in 1996, in the early evening, after having dinner with appellant's mother, Heather drove appellant in her Ford Festiva to the El Rancho restaurant, which was closed at the time. She drove up to the side of the building, and she could see the trailer from where she parked. She then drove

---

[1]Mr. and Mrs. Sandoval divorced before the murder trial began, but were married during the period surrounding Perez's murder. For the sake of simplicity, she is referred to as "Mrs. Sandoval" herein.

[2]The rule relates to witnesses competency, stating in relevant part: "Every person is competent to be a witness except: . . . A spouse testifying against the other spouse charged with a crime except when either of the following applies: a crime against the testifying spouse or a child of either spouse is charged; [or] the testifying spouse elects to testify." Ohio Evid. R. 601. In this case, Mrs. Sandoval elected to testify.

away from the restaurant alone, and parked on the side of a nearby gas station. She testified that the gas station was open at the time and that there were people around. She sat alone in the car for about ten minutes, at which time appellant returned to the car. Upon his return, appellant was holding a "crowbar" and he had "a little bit of blood on his hands." (When shown a picture of a tire iron, Heather confirmed that the item in the picture is what she calls a crowbar.) With appellant in the car, she then drove to the river.

*Sandoval*, 2002 WL 398331, at *3.

In addition to the testimony from Mrs. Sandoval, the jury also heard from Michael Earl, who testified that Sandoval had confessed to committing the murder, in accurate detail, on three occasions. Mr. Earl testified that he secretly taped the last of these confessions while cooperating with law enforcement officials.

The prosecution also introduced evidence from an officer assigned to Perez's murder investigation and a forensic scientist. The officer testified to the existence of the taped confession and corroborated Earl's testimony regarding its contents, although the tape itself was never introduced into evidence. The forensic scientist testified that evidence found at the scene of the murder—blood on a key left in the victim's door—was consistent with Sandoval's DNA profile (but that the same DNA profile would occur in 1 in 73 Caucasians and 1 in 85 Hispanics).

No other significant evidence was introduced at trial, and Sandoval did not testify on his own behalf.

**DISCUSSION**

**I.      Standard of Review**

4

This Court reviews the legal conclusions underlying a district court's denial of a petition for habeas corpus *de novo*, and reviews its factual findings for clear error. *Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009) (*citing White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005)).

Habeas review is subject to The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which permits a federal court to grant habeas relief only where a state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is contrary to federal law when "the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent," but reaches a contrary decision. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision evidences an unreasonable determination of the facts when "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts." *Smith v. Hofbauer*, 312 F.3d 809, 813 (6th Cir. 2002).

A habeas claim cannot be granted by a federal court upon a mere determination that the "relevant state court decision applied clearly established federal law erroneously or incorrectly;" instead, the federal court must find the state court's application of the law "objectively unreasonable." *Williams*, 529 U.S. at 409. The "AEDPA thus imposes a highly deferential standard

for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, 130 S. Ct. 1855, 1862 (2010).

**II.     Analysis**

Federal habeas review is limited to claims that implicate a federal law or a Constitutional protection. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). We have held that "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence," are usually not cognizable in federal habeas corpus. *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). "Otherwise stated, a state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

A state court decision on state law grounds can only rise to the level required for habeas relief if the "determination is so "fundamentally unfair" that it deprives a defendant of due process" *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (*quoting Bey*, 500 F.3d at 519). We have held that state court evidentiary rulings may rise to this level only in certain, limited circumstances, such as "when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

"Beyond the specific guarantees enumerated in the Bill of Rights, the due process clause has limited operation. [The Supreme Court has] defined the category of infractions that violate "fundamental fairness" very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The

Court has defined actions that violate fundamental fairness as only those that implicate the "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

In the case now before us, there is no question that Mrs. Sandoval's testimony was barred by the Ohio marital privilege statute;[3] the Ohio appellate court held that "the trial court erred in admitting the testimony of Heather Sandoval." *Sandoval*, 2002 WL 398331, at *3. Therefore, the sole question before this Court is whether the state court's error rises to the level of a due process violation.

Sandoval argues that the admission of Mrs. Sandoval's testimony was "so prejudicial, it deprived the petitioner of the right to due process of law under the Fourteenth Amendment and caused the petitioner to have been tried unfairly." (Pet'r Br. at 7.) Respondent contends that "the question of admissibility of Heather Sandoval's testimony was purely a decision applying state law regarding a statutory marital communication privilege and was not an error of constitutional magnitude." (Resp't Br. at 13.)

---

[3]The Ohio marital privilege statute states, in relevant part:

> Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness . . . . The presence or whereabouts of the husband or wife is not an act under this section. The rule is the same if the marital relation has ceased to exist.

Ohio Rev. Code Ann § 2945.42.

A survey of the history of the marital privilege reveals that the privilege does not have a grounding in the concepts that underpin the constitutional guarantee of due process. *See, e.g., Trammel v. United States*, 445 U.S. 40, 44 (1980) (reviewing the history of the marital privilege and concluding that "the modern justification for this privilege against adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the marriage relationship.") As the Eighth Circuit has succinctly stated, "the policies furthered by proper application of the marital privilege in any of its forms are quite distinct from the concerns for fairness and reliability protected by the Due Process Clause." *Byrd v. Armontrout*, 880 F.2d 1, 9-10 (8th Cir. 1989).

Instead of fundamental fairness, "the basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle v. United States*, 291 U.S. 7, 14 (1934) (referring to the common law spousal privilege as applied by federal courts). The Ohio marital privilege statute is based in the same principles of marital peace and preservation. *See, e.g., State v. Mowery,* 1 Ohio St. 3d 192, 198 (1982) (describing the purpose as "the achievement of marital peace and harmony"); *State v. Antill*, 176 Ohio St. 61, 64 (1964) (opining that "to promote marital peace there is a privilege not to disclose in court confidential communications between husband and wife").

The rationale supporting the recognition of the marital privilege is not changed by the content of the disclosure. As both the magistrate and district judges in this case noted, some circuits have gone so far as to suggest that the "violation of a marital privilege can never support habeas relief because the purpose of the privilege is to protect the institution of marriage, not to ensure the

reliability of evidence." *Sandoval*, 2007 WL 2071908, at *2 (*citing Simpson v. Neal*, 986 F.2d 1424 (7th Cir. 1993) (considering rationale behind marital privilege and finding that "clearly, recognition of the marital privilege is not necessary to afford due process.").

In this case, the bar to Mrs. Sandoval's testimony was the Ohio state marital privilege statute. And the rationale underpinning that statute is the preservation of "marital peace." Mrs. Sandoval's decision to jeopardize that peace by providing testimony did not contribute to a fundamentally unfair trial for Sandoval.

Because the privilege claimed by Sandoval is granted by state law only, and because any error in violating that privilege does not rise to the level of fundamental unfairness prohibited by due process, the trial court's error in admitting Mrs. Sandoval's testimony does not support granting a petition for a writ habeas corpus.

## CONCLUSION

Because the Ohio state court's admission of evidence in violation of a state martial privilege statute does not rise to the level of a due process violation, Sandoval has failed to present a cognizable claim under habeas corpus. We hereby **AFFIRM** the decision of the district court.