NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0863n.06

No. 11-1217

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 08, 2012*

LEONARD GREEN, Clerk

JOHN PATRICK EMERICK,

      Petitioner-Appellant,

v.

JOHN PRELESNIK,

      Respondent-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

                              /

BEFORE:    CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.[*]

**CLAY, Circuit Judge**. Petitioner John Patrick Emerick, a Michigan state prisoner, appeals the district court's order denying his habeas corpus petition filed pursuant to 28 U.S.C. §2254. Petitioner was convicted of various criminal sexual conduct offenses under Michigan Compiled Laws (M.C.L.) §750.520b and §750.520c. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

Petitioner was accused of sexually abusing his two daughters T.E. and K.W. The alleged victims were under the age of thirteen when the events occurred between 1988 and 1996. Petitioner married Carla Emerick, the mother of T.E., in 1981 and moved to Port Huron, Michigan in 1985.

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

The mother of K.W., Christine Wickings ("Wickings") met Petitioner in 1990 and moved in with Petitioner and his current wife Carla in 1991. Petitioner and Carla Emerick divorced and Petitioner married Wickings. Petitioner and Wickings also later divorced.

At Petitioner's trial, T.E. testified that she had a good relationship with her father but things changed when she was five or six years old. T.E. stated that Petitioner engaged in repeated sexual acts with her, including inappropriate touching and fondling and he also attempted sexual intercourse. In addition, T.E. stated that she often looked at Playboy magazines with Petitioner. T.E. testified that Petitioner threatened her if she ever told anyone about the sexual incidents and that he could go away for a very long time, therefore T.E. remained silent. T.E. lied to her mother, Children's Services, and to the police about the abuse. According to T.E., the abuse ended when she was around age twelve when she told Petitioner to stop.

K.W. testified at trial that Petitioner began touching her inappropriately around age four or five. Petitioner also told K.W. not to tell anyone about the sexual incidents. K.W. stated that the abuse happened at least more than ten times but less than 100. T.E. stated that she also witnessed Petitioner engage in sexual activity with K.W. T.E. observed Petitioner on top of K.W. and saw him reach up her pajamas. T.E. never reported the incident.

Wickings, K.W.'s mother, testified at Petitioner's trial that she started to become suspicious of Petitioner's behavior toward the children after two separate incidents. On the first occasion, Wickings testified at Petitioner's trial that after she returned from the laundry mat she saw Petitioner enter the kitchen tying his robe. Wickings then went into the bedroom and saw T.E. putting on her tights. When Wickings asked Petitioner what was going on, Petitioner responded that he had not

been in the room with T.E., who was playing Nintendo by herself. On the second occasion, Wickings testified that she noticed that Petitioner suddenly turned off his music. Wickings went upstairs to investigate and she saw Petitioner coming out of T.E.'s bedroom. Wickings went into T.E.'s bedroom and found her under the blanket with her pajamas up around her neck. When Wickings and T.E. were alone, T.E. told Wickings about the sexual abuse. However, T.E. later denied the abuse and stated that she only spoke of such incidents to see how Wickings would react. Wickings also confronted Petitioner about her suspicions of child abuse, but Petitioner denied any wrongdoing and also threatened to take K.W. away if Wickings said anything to his ex-wife, Carla.

Petitioner's son, Brian Emerick, testified that he also became suspicious of Petitioner's behavior. At trial, Brian stated that there were times Petitioner asked him to go outside while Petitioner and T.E. remained in the house. When Brian would return, he would see T.E. leaving Petitioner's room, and Petitioner would be wearing only a robe and T.E. a nightgown. Brian also noticed that T.E. often acted scared around her father but Brian never told anyone about his observations of T.E. and Petitioner's relationship.

In October 1997, Wickings filed a complaint with the Port Huron Police, in which she alleged that Petitioner sexually abused his children. Detective Elaine Butts of the Port Huron Police followed up on Wicking's complaint and testified that when she first spoke with K.W. about the allegations of sexual abuse, K.W. denied any knowledge of the allegations. In May 2000, Detective Butts spoke to K.W. a second time, and the detective received information that led to the filing of the present charges against Petitioner.

At trial, Petitioner denied all allegations of child abuse. On cross-examination the prosecutor asked Petitioner whether he had a prior conviction in Florida involving the sexual fondling of a child under the age of 14, for which he was sentenced to five years probation. The prosecutor asked the following series of questions:

> Q: Would you agree with me, sir, that a person who molests their children would do so in a way as not to be caught?
>
> A: I can't say—answer that question because I don't know about child molesters.
>
> Q: Oh. You don't know anything about child molesters?
>
> A: Well, other than what they are accused of, yes.
>
> Q: You have no familiarity with accusations –

(6/21/01 Trial Tr., Page ID # 750–51.) Petitioner's counsel objected to this line of questioning arguing that the prejudicial affect of allowing this evidence outweighed any probative value. Petitioner's counsel stated the following concern:

> Counsel: Your Honor, I believe that this—what I anticipate the line of testimony—or line of questioning to be and based upon the conversations we had in chambers this morning to, to concern a 1985 matter in Florida . . . where a no contest plea was tendered. There was no adjudication of guilt. There was no—I believe the record says there was no adjudication of a sentence. There was a [probation and dismissal].

(6/22/01 Trial Tr., Page ID # 775.)

The state trial court ruled that the prosecutor could pursue questioning on Petitioner's prior Florida conviction to determine Petitioner's credibility. Petitioner testified that the sexual fondling case was resolved with a nolo contendere plea, five years of probation, and no conviction.

At the close of the trial, the judge gave the jury the following instructions:

4

> You've heard evidence that was introduced to show that the Defendant was previously involved in an incident in Florida. This evidence was admitted for a limited purposes, that is, to consider whether you believe the Defendant testified as a truthful witness in response to the Prosecutor's witness-question. You must not consider this evidence for any other purposes. For example, you must not decide that it shows the Defendant is a bad person or the Defendant is likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct.

(*Id*. at Page ID # 869.) The judge instructed the jury that they could use the evidence regarding Petitioner's prior offense involving the sexual molestation of a child only for purposes of determining Petitioner's credibility as a witness and not to determine Petitioner's character or decide his propensity to commit a crime.

On June 22, 2001, a jury in the St. Clair County Circuit Court found Petitioner guilty of seven counts of first degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen), and one count of second degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under the age of thirteen). The court sentenced Petitioner to concurrent terms of 30 to 60 years in prison for the first degree criminal sexual conduct conviction and 10 to 15 years for the second degree criminal sexual conduct conviction.

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. *See People v. Emerick*, No. 236065, 2002 WL 31947932 (Mich. Ct. App. Dec. 3, 2002.) The court affirmed Petitioner's convictions and sentences. The Michigan Supreme Court denied leave to appeal. *See People v. Emerick*, 468 Mich. 916 (2003).

Petitioner filed a motion for relief from judgment on June 1, 2004. Petitioner's counsel moved to disqualify the trial judge after a confrontation over counsel's attempt to view the trial

videotapes. The trial judge denied the motion, and the chief judge denied a subsequent defense motion to disqualify all the judges on the circuit court bench. Petitioner then filed interlocutory appeals. The Michigan Court of Appeals denied leave to appeal for failure to persuade the court of the need for immediate appellate review. The Michigan Supreme Court also denied leave to appeal. *See People v. Emerick*, 477 Mich. 973 (2006).

The trial court then denied Petitioner's motion for relief from judgment. Petitioner appealed to the Michigan Court of Appeals, which denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). Petitioner did not appeal that decision.

On September 18, 2008, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. Petitioner later filed an amended petition, which raised five claims: (1) the trial court's decision to admit evidence of a 1985 out-of-state conviction constituted an abuse of discretion; (2) the trial court abused its discretion by joining his two cases, which denied Petitioner a fair trial, and Petitioner's counsel was ineffective for failing to object and move for severance; (3) Petitioner was denied a fair trial due to prosecutorial misconduct; (4) Petitioner was entitled to judicial disqualification due to judicial bias; and (5) Petitioner's counsel was ineffective before and during trial. The district court denied relief on all claims. The district court granted Petitioner a certificate of appealability on his first three claims, but denied him a certificate as to claims four and five.

## DISCUSSION

### I. Standard of Review

Because Petitioner filed his petition for writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA governs our review. We review the district court's conclusions of law *de novo* and its factual findings for clear error for a denial of a petition of habeas corpus. *Haliym v. Mitchell* 492 F.3d 680, 689 (6th Cir. 2007). Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless: (1) the state's court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or (2) the state court's decision "was based on an unreasonable application of the facts in light of the evidence presented in the State court proceedings." § 2254(d)(2).

A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court decision unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. The AEDPA

standard "is a difficult one to meet" and "demands that [state court] decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations and citations omitted). We may grant habeas relief if the state court decision was an "objectively unreasonable" application of clearly established federal law. *Williams*, 529 U.S. at 409. A habeas court must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1).

## II. Analysis

### A. Petitioner's "Other Bad Acts" Evidence

Petitioner claims that the trial court abused its discretion when the trial court allowed the prosecutor to question Petitioner about his 1985 no-contest plea, involving the sexual fondling of a child under the age of 14, for which he was sentenced to five years probation. Petitioner argues that neither his character; "nor any trait of character, were an essential element of the charged offenses of first degree criminal sexual conduct" and such evidence was in violation of MRE 404(a)(1) or Fed. R. Evid. 404(a) and also a violation of his due process rights. The district court adjudicated Petitioner's claim on the merits and subsequently denied relief on the basis that his evidence claim is a matter of state evidentiary law and Petitioner failed to present a constitutional question that would warrant federal habeas relief.

We have "held that 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence' are usually not cognizable in federal habeas corpus." *Sandoval v. Toledo Correctional Inst.*, 409 F.App'x 847, 850 (6th Cir. 2010) (quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)). To the extent Petitioner's state law evidence claim attempts to assert a federal constitutional violation of his due process rights, "we review [the claim] under the

general due-process standard: whether the defendant was denied a fundamentally fair trial." *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir. 2010).

Even applying the general due process standard, Petitioner's claim cannot prevail. The Michigan Court of Appeals concluded that the other bad acts evidence was improperly admitted but the court also determined that the evidence was not prejudicial to Petitioner. We agree. The prosecutor sought to question Petitioner on the Florida plea for the limited purpose of impeaching his credibility after Petitioner testified that he had no knowledge of matters concerning a child molestation charge. It is clear from the record that the judge considered the relevancy of the evidence as well as its prejudicial value. In making this determination, the judge explicitly instructed the jury to only consider the evidence for the sole purpose of whether the "Defendant testified as a truthful witness in response to the Prosecutor's witness-question." The trial court's limiting instruction mitigated any potential risk of prejudice to Petitioner.

Furthermore, there is no evidence to suggest that the state court's reasoning was contrary to clearly established federal law. Petitioner claims that the Supreme Court's decisions in *Dowling v. United States* and *Old Chief v. United States* support his argument that propensity evidence in the form of other bad acts violates due process. Those cases, however, do not prohibit the admission of other bad acts evidence for purposes of establishing the credibility of a witness. In *Dowling*, the Supreme Court addressed the issue of whether the admission of testimony regarding a prior robbery charge of which Dowling was acquitted, violated Dowling's due process rights to a fundamentally fair trial. *Dowling v. United States*, 493 U.S. 342, 352–54 (1990). The Supreme Court held that the admission of Dowling's prior robbery charge under Rule 404(b) did not violate the Due Process

Clause. Specifically, the Court found that the evidence was akin to modus operandi and thus used to establish the identity of the perpetrator and not to prove disposition. *Id*. at 348–52, 354. The Court determined that the evidence was "at least circumstantially valuable in proving petitioner's guilt." *Id*. at 353. Furthermore, the trial court provided a limiting instruction to the jury about the use of the evidence. *Id*. The Supreme Court held in *Old Chief* that the district court erroneously allowed the prosecution to use the full record of the defendant's prior conviction of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1154, to prove the element of a prior felony conviction necessary for his unlawful possession of a firearm charge under § 18 U.S.C. 922(g)(1). 519 U.S. 172, 174–78, 190–92 (1997). Petitioner's case, however, is distinguishable from *Old Chief* because *Old Chief* did not address whether the inclusion of prior acts testimony gave rise to a constitutional violation. Similarly the two cases relied upon in this Circuit—*United States v. Lucas* and *Bey v. Bagley*— are also inapposite to the case before us. In both cases this Circuit conducted a balancing analysis pursuant to Rule 404(b) to determine whether the probative value of the other bad acts evidence substantially outweighed the danger of any prejudicial effect. In *Lucas*, this Circuit rejected the defendant's attempted use of a third party's prior drug conviction because the evidence was to be used for purposes of proving the third party's propensity to sell drugs and was therefore prejudicial. *United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004). In this case, the prosecutor's use of the evidence is not for purposes to prove propensity but to impeach Petitioner's credibility. In *Bey*, this Circuit held that although the admission of the defendant's other acts evidence was prejudicial to his defense, it was not unfairly prejudicial because the evidence was highly probative to prove the murderer's identity and therefore could be admitted at trial. *Bey v.*

*Bagley*, 500 F.3d 514, 522 (6th Cir. 2007). In this case, the trial court mitigated any potential prejudice to the Petitioner through its instruction to the jury. Because the trial court's admission of Petitioner's "other acts" evidence was not prejudicial or offensive to "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)) (citations omitted), Petitioner cannot prove an unreasonable application of federal law necessary to warrant habeas relief.

### B. Joinder of T.E. and K.W.'s Cases

In his second claim for habeas relief, Petitioner argues that the prosecution abused its discretion when it joined T.E and K.W.'s cases together in one information, denying him a fair trial. Petitioner further claims that trial counsel's failure to timely object and move for severance constituted ineffective assistance of counsel and also denied Petitioner the right to a fair trial.

Petitioner, however, procedurally defaulted this claim. There are two ways in which a claim may be procedurally defaulted. First, a petitioner may fail "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Second, a petitioner may fail "to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Id*. (internal quotation marks and citation omitted).

In this case, Petitioner admitted that he procedurally defaulted his claim after he conceded to the Michigan Court of Appeals that he did not raise this issue to the Michigan trial court. *Emerick*, 2002 WL 31947932, at *2. Petitioner acknowledged to the court that he did not file a motion to

sever the two cases and he further does not present any argument that the Michigan Court of Appeals decision, which found that in the absence of a motion to sever there was no abuse of discretion by the prosecution to permit joinder of the two cases, was contrary to clearly established federal law. The Michigan Court of Appeals concluded that Petitioner failed to show a "court rule violation, or prosecutorial abuse of discretion" and declined to review the claim on the merits. *Id*. Although Petitioner may overcome a procedural default by a showing of cause for the default and prejudice, he has not demonstrated either standard to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991). Because we may not grant a habeas petition if a Petitioner fails to exhaust "the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1), we are thus barred from federal habeas review.

Petitioner also asserts that his trial counsel rendered ineffective assistance by failing to file a motion to sever. While the Michigan Court of Appeals declined to address Petitioner's claim to sever the two charges on the merits, on the issue of ineffective assistance of counsel, the state court of appeals found that "[d]efendant had not established that counsel was ineffective in not filing a motion to sever." *Emerick*, 2002 WL 31947932, at *2. The court of appeals reasoned that Petitioner's counsel's decision not to file a motion to sever may have been a strategic decision but nonetheless determined that Petitioner's counsel was not ineffective for failing to move for severance of the two cases. *Id*.

Ineffective assistance of counsel claims are governed by the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court stated that a Defendant must first show that:

12

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. Under the first prong of the analysis, we must determine whether Petitioner's "counsel's performance was deficient." *Id*. Petitioner has the burden to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the second prong of the *Strickland* analysis, we must find a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Black v. Bell*, 664, F.3d 81, 103 (6th Cir. 2011) (citing *Strickland*, 466 U.S. at 694). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*.

In the habeas context, we apply the *Strickland* framework and conduct a "doubly deferential judicial review" to evaluate an ineffective assistance of counsel claim "under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S.Ct. 770, 785 (2011). Thus, in light of *Harrington*, our analysis is limited to whether the Michigan Court of Appeals decision constituted "an *unreasonable* application of federal law." *Id*.

13

The state appellate court's decision in this case was not an unreasonable application of federal law. Petitioner's counsel's decision to permit joinder of the two child abuse cases did not amount to ineffective assistance of counsel. The Michigan Court of Appeals held that Petitioner's counsel's failure to move for a severance may have reflected a strategic judgment. Specifically, counsel may have concluded that "rather than face two trials, [Petitioner] would be better off trying to create reasonable doubt in one jury, resulting in an acquittal of all charges." *Emerick*, 2002 WL 31947932, at *2. This holding does not constitute an unreasonable application of *Strickland* under the extraordinary deferential standard of review applicable here. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (noting that even "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.") (citations omitted). Therefore, Petitioner cannot prevail on his ineffective assistance of counsel claim.

## C.    Prosecutorial Misconduct

Finally, Petitioner argues that his constitutional right to a fair trial was violated by the prosecutor's misconduct during closing argument. Petitioner contends that the prosecutor improperly interjected Petitioner's character into her remarks, thereby unfairly prejudicing the jury against him.

In evaluating a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted).

In this case, Petitioner challenges the prosecutor's comments at closing argument and contends that the prosecutor "sought to persuade the jury that he lived in a sex-charged and alternative lifestyle, inappropriate and different than 'everybody else.'" (Pet'r's Br. 32.) At closing argument, the prosecutor made the following statements:

> Now, the fact that he had a girlfriend and he got her pregnant in the Rawlins house while they're sharing a bedroom with the wife and the husband, hey, may be interesting information, maybe lends context to this whole scenario, but do I need to prove that beyond a reasonable doubt? No. . . .

> The fact that they lived in the Rawlins house and then on 12th Street and that they were part of almost communal living, it sounds like, sharing beds and people coming into bedrooms in the middle of the night and all this other stuff, although it helps you understand what the heck's going on, it's not my requirement to prove it beyond a reasonable doubt.

(6/22/01 Trial Tr., Page ID # 832–33.)

Petitioner's counsel refuted the prosecutor's accusations concerning Petitioner's living situation and stated to the jury that a person may not be convicted of a crime on the basis of their living situation. On rebuttal, however, the prosecutor again referenced Petitioner's living situation as something beyond a "dysfunctional family" and a place where there are "no appropriate boundaries."

We agree with the Michigan Court of Appeals conclusion that the prosecutor's remarks at closing arguments regarding Petitioner's living situation were improper because the comments were unrelated to the criminal sexual conduct charges. But any misconduct by the prosecution does not satisfy the *Darden* test for a due process violation as none of the statements were "so flagrant as to warrant reversal." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005). In addition, none of the statements were directed at witness credibility nor did these statements express the prosecutor's

15

personal belief in Petitioner's guilt. *See Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) (finding that "it is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying"). In reviewing the prosecutor's closing argument, it is clear from the record that the prosecutor primarily kept the focus of the statements on proving the elements of the alleged crimes. The statements set forth above were not comments on the credibility of the witnesses and thus did not deprive Petitioner of a fair trial. The prosecutor's misconduct did not "so infect [] the trial with unfairness as to make the resulting conviction a denial of deu process." *Darden*, 477 U.S. at 181 (internal quotation marks omitted). The state court's determination that the prosecutor's misconduct did not deprive Petitioner of a fair trial was not unreasonable.

In summary, Petitioner is unable to demonstrate that the trial court violated clearly established law when it permitted testimony concerning his 1985 Florida no-contest plea on a child molestation charge for purposes of determining Petitioner's credibility. Further, Petitioner procedurally defaulted his claim to sever the two cases and thus his claim is not cognizable on habeas review. In addition, Petitioner's counsel's refusal to sever the two cases did not constitute ineffective assistance of counsel. Finally, the prosecutor's conduct during closing argument did not deny Petitioner a right to a fair trial. Therefore, the state appellate court's rejection of his claims was not an unreasonable application of clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts; and Petitioner is not entitled to habeas relief on any of his claims.

## CONCLUSION

For these reasons, we **AFFIRM** the district court's order denying the petition for writ of habeas corpus.